UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Thomas Johnston, *et al.*,

    Plaintiffs,

    v.

New Miami Local School District
Board of Education, *et al.*,

    Defendants.

Case No. 1:14cv973

Judge Michael R. Barrett

**OPINION & ORDER**

This matter is before the Court upon Plaintiffs' Motion for Partial Summary Judgment as to Count IX against Defendant Ohio Department of Education (Doc. 58); Defendant Ohio Department of Health's Motion for Summary Judgment (Doc. 62); and Plaintiffs' Motion for Partial Summary Judgment as to Count X against Defendant Ohio Department of Education (Doc.73). These motions have been fully briefed (Docs. 72, 73, 81, 83, 91); and the Court has also considered the brief by Amicus Disability Rights Ohio (Doc. 92). Also before the Court is Plaintiffs' Motion to Strike the Affidavit of Susan Zake. (Doc. 74).

**I.**    **BACKGROUND**

There is very little disagreement between the parties about the facts of this case. By way of background, this case arose out of a state administrative complaint Plaintiffs filed with Defendant Ohio Department of Education ("ODE"). Plaintiffs are the parents of B.J., who is 15-year old student with disabilities. B.J. has been diagnosed with Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder, anxiety, and learning

disabilities in reading and math. Since the third grade, B.J. has been provided education through an Individualized Education Program ("IEP"). The IEP must "contain a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress." *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 853 (6th Cir. 2004), *aff'd sub nom. Deal v. Hamilton Cty. Dep't of Educ.*, 258 F. App'x 863 (6th Cir. 2008) (quoting *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 763 (6th Cir. 2001)); *see also* 20 U.S.C. § 1401(a)(20)). School districts receiving funds under the Individuals with Disabilities Education Act ("IDEA") are required to establish an IEP for each child with a disability. *Deal*, 392 F.3d at 853. The IDEA was enacted to ensure that all children with disabilities receive a Free Appropriate Public Education ("FAPE"). As part of providing FAPE, school districts are required to establish an IEP for each child with a disability. *Id.* (citing 20 U.S.C. § 1414(a)(5)).

It was agreed that during the 2014-15 school year, B.J. would attend the high school operated by Defendant New Miami Local School District Board of Education ("the District"). At the open house on August 12, 2014, B.J. introduced himself to the principal and allegedly stated that he was going to terrorize the school. Two days later, the District advised the parents that it was suspending B.J. for ten days. The parties met for a manifestation determination, which determines whether the child's behavior that is the subject of the discipline is related to the child's disability. The District determined that B.J.'s behavior was not related to his disabilities. After another similar incident which allegedly occurred on August 28, 2014, the District expelled B.J. However, an IEP meeting was not convened to determine what services B.J. needed while he was out of

school.

After Plaintiffs filed their administrative complaint with ODE on September 25, 2014, ODE conducted an investigation and issued its findings on November 10, 2014. (Doc. 31-1). ODE found that because the District excluded B.J. from school without any services, the District was in violation of the IDEA.[1] ODE ordered the District to conduct a new manifestation determination, develop a new IEP for B.J., and provide B.J. with compensatory education. ODE gave the District a deadline of December 5, 2014. The District did not comply with ODE's orders by that date, and instead asked for an extension to December 19, 2014.

On December 12, 2014, Plaintiffs filed a due process complaint pursuant to the provisions of the IDEA allowing the filing of an expedited hearing request in matters pertaining to student discipline. Through the month of December, the ODE hearing officer attempted to set up a conference call between Plaintiffs and the District to set a schedule for the proceedings.

On December 19, 2014, Plaintiffs filed their original complaint in this Court, naming ODE as a Defendant and seeking a temporary restraining order ("TRO"). On December 26, 2014, Plaintiffs and counsel for the District came to an agreement to resolve the issues necessitating the TRO motion and it was withdrawn. This written agreement stated that the District would convene a meeting no later than January 6, 2015, and would begin home instruction for B.J. no later than January 7, 2015.

On December 31, 2014, ODE issued a notice of non-compliance and threatened to

---

[1] Specifically, the ODE found the District failed to conduct an appropriate manifestation determination; failed to convene an IEP meeting to determine what services B.J. would need while out of school; failed to update the Student's IEP to reflect the change in placement; failed to implement an IEP by not providing any services at all; and failed to provide prior written notices when the District failed to convene an IEP meeting or determine necessary services.

3

withhold funds from the District. (Doc. 31-2). ODE gave the District until January 15, 2015 to address its noncompliance.

The District failed to provide home instruction on January 7, 2015, and on January 9, 2014, the ODE hearing officer ordered the District to provide home instruction on January 12, 2015. However, on January 12th, the teacher assigned to work with B.J. did not show up for instruction.

On January 15, 2015, ODE again notified the District in writing that it would withhold funds if the District failed to comply. (Doc. 31-3). ODE gave the District thirty days to make corrections. On February 12, 2015, ODE began to withhold funds from the District. On March 5, 2015, Plaintiffs signed a settlement agreement with the District and released their claims up to and including the date of the Agreement. B.J.'s first day of instruction was March 13, 2015. The District was also supposed to provide B.J. with remedial services over the summer of 2015, however, the District did not provide these services.

On August 21, 2015, this Court ordered the District to provide special education services to B.J for a period of eight weeks. (Doc. 56). On October 5, 2015, this Court extended this order until the case resolved or until further order of the Court. (Doc. 60).

In their Second Amended Complaint, Plaintiffs brought the following claims against ODE: violation of the IDEA (Count IX); violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, based on ODE's knowing refusal to accommodate B.J.'s educational needs (Count X); and 42 U.S.C. § 1983 based on a Fourteenth Amendment Due Process violation (Count XI). Plaintiffs and ODE have stipulated to the dismissal of Plaintiffs' claim under Section 1983. (Doc. 75). In addition, Plaintiffs' claims against the District

have been settled and dismissed. (Doc. 69).

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). These standards upon which the court evaluates motions for summary judgment do not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### B. Motion to Strike

In their Motion to Strike the Affidavit of Susan Zake (Doc. 74), Plaintiffs seek to strike Paragraph 5 which states: "I am aware of no other instance in which the relevant district has not complied with corrective action required by complaint findings within the time set in the initial letter or shortly thereafter." Plaintiffs also seek to strike the sentence in Paragraph 6 stating: "The district's failure to serve this student and to respond to ODE's efforts to ensure compliance all occurred within her tenure." ODE was given an extension of time to respond to Plaintiffs' Motion, but instead filed a Second Affidavit or Susan Zake Under Seal. (Doc. 88). Accordingly, Motion to Strike the Affidavit of Susan

Zake (Doc. 74) is GRANTED.

### C. IDEA

In Court IX of the Second Amended Complaint, Plaintiffs bring a claim for a violation of the IDEA. The parties have both filed for summary judgment on this claim.

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). As one court has explained:

> To effectuate this goal, Congress established a three-tiered funding, administration, and implementation scheme, under which the state must submit a plan of compliance to the Secretary of Education which provides federal IDEA funds to the state. *See* 20 U.S.C. §§ 1412-1414. The state is then responsible for administering the funds on the state level, including the distribution of federal funds to local education agencies (LEAs) and the implementation of policies and procedures to ensure that each LEA expends the funds in a manner consistent with the purpose and substantive provisions of IDEA. *See* id. §§ 1413(a), 1414(b). In order to qualify for IDEA funds, each LEA must apply to the state education agency (SEA) and provide certain assurances of compliance with IDEA. *See id.* § 1414(a). The LEA then provides services directly to children with disabilities using the funds obtained from the SEA. *See id.*

*Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 942-43 (4th Cir. 1997).

Plaintiffs explain that from the time Plaintiffs filed their complaint with ODE at the end of September of 2014, ODE was aware B.J. was not in school or receiving services. Plaintiffs explain further that at no time did ODE step in to provide services directly to B.J. Plaintiffs maintain that ODE was required to provide direct services pursuant to IDEA and the regulations implementing the IDEA, which mandate that the SEA use funds otherwise available to local school districts to provide FAPE when the school district itself fails to provide FAPE.

ODE argues that Plaintiffs cannot bring their IDEA claim against ODE because Plaintiffs are subject to the Consent Decree entered by this Court in *Doe v. State of Ohio*, 2:91-cv-464 (S.D. Ohio).[2]  ODE explains that Plaintiffs have not complied with the consent decree's notice and negotiation requirements.   However, as Plaintiffs point out, by its own terms, the consent decree only applies to the claims "in existence at the date that this Consent Order is approved by the district court."   (Doc. 19-1, PAGEID # 303). Based on this language, the Court concludes that Plaintiffs' claims are not subject to the notice and negotiation requirements of the Consent Decree.

Next, ODE maintains that Plaintiffs do not have standing to bring their IDEA claim because the claim is moot.  ODE explains that the underlying due process claim was resolved and Plaintiffs obtained the relief they were seeking at the administrative level. ODE also argues that this Court cannot order systematic changes absent evidence of systemic violations of federal rights.

Plaintiffs respond that their IDEA claim does not seek the services which were sought in the administrative proceedings.   Plaintiffs also explain that they are not seeking system-wide relief.   Instead, Plaintiffs state that they are seeking declaratory relief in the form of a declaration that ODE failed to comply with its obligations and must provide direct services to B.J when the District is unable or unwilling to do so.   This type of equitable relief is available under IDEA.   *See* 20 U.S.C. § 1415(i)(2)(C)(iii) (in a civil action brought under IDEA, the court "shall grant relief as the court determines is appropriate").

Courts have interpreted the language, structure and legislative history of the IDEA to permit a SEA to be held financially responsible when the LEA fails to provide FAPE to a

---

[2] In 2009, the State of Ohio entered into a Consent Order in this Court as the result of a class action lawsuit filed against it on behalf of all children with disabilities in the State.

7

child with a disability. See, e.g., *Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir. 1997) (concluding "an SEA may be held liable under IDEA where the state fails to provide a free appropriate public education to a child with a disability"); *St. Tammany Par. Sch. Bd. v. State of La.*, 142 F.3d 776, 784 (5th Cir. 1998) (concluding that "the district court did not err by interpreting IDEA to allow it to impose liability upon the Department, rather than the School Board, for the costs pending a merits-decision"); *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (explaining that state educational agencies may be responsible for violations of the IDEA when the state agency in some way "fail[s] 'to comply with its duty to assure that the IDEA's substantive requirements are implemented.'") (quoting *John T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 864-65 (8th Cir. 2001)); *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 516 (E.D. Pa. 2014) (provisions of IDEA as well as legislative history "clearly signal that the SEA is to bear primary responsibility for ensuring that every child receives the FAPE that he or she is entitled to under the IDEA. While the SEA ordinarily delegates actual provision of this education to LEAs, the SEA by statute must step in where a LEA cannot or will not provide a child with a FAPE.").

The question here is not whether the SEA is financially responsible for providing services, but whether this Court can order the SEA to provide services directly when the LEA fails to provide FAPE to a child with a disability. When presented with this specific issue, the Supreme Court was "equally divided on the question." *Honig v. Doe*, 484 U.S. 305, 329, 108 S. Ct. 592, 607, 98 L. Ed. 2d 686 (1988). While the Supreme Court affirmed the Ninth Circuit's decision to hold the SEA responsible for provision of a FAPE, it did not specifically adopt the Ninth Circuit's conclusion regarding the duty to provide

services directly, which was:

> The state is not obliged to intervene directly in an individual case whenever the local agency falls short of its responsibilities in some small regard.  The breach must be significant (as in this case), the child's parents or guardian must give the responsible state officials adequate notice of the local agency's noncompliance, and the state must be afforded a reasonable opportunity to compel local compliance.

*Doe by Gonzales v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986).  In *Maher*, the Ninth Circuit was addressing the plaintiffs' claims under the Education of All Handicapped Children Act, a predecessor to IDEA.  The statutory language analyzed by the court in *Maher* largely remains unchanged in a provision of IDEA entitled "Direct services by the State educational agency," which provides:

> (1) In general
>
> A State educational agency shall use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency, or for whom that State agency is responsible, if the State educational agency determines that the local educational agency or State agency, as the case may be—
>
> (A) has not provided the information needed to establish the eligibility of such local educational agency or State agency under this section;
>
> (B) is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a);
>
> (C) is unable or unwilling to be consolidated with 1 or more local educational agencies in order to establish and maintain such programs; or
>
> (D) has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children.
>
> (2) Manner and location of education and services
>
> The State educational agency may provide special education and related services under paragraph (1) in such manner and at such locations

> (including regional or State centers) as the State educational agency considers appropriate. Such education and services shall be provided in accordance with this subchapter.

20 U.S.C § 1413(g). The implementing regulations track the language of the statute. Plaintiffs rely on these specific provisions:

> (a) General
>
> (1) An SEA must use the payments that would otherwise have been available to an LEA or to a State agency to provide special education and related services directly to children with disabilities residing in the area served by that LEA, or for whom that State agency is responsible, if the SEA determines that the LEA or State agency—
>  . . .
>
> (ii) Is unable to establish and maintain programs of FAPE that meet the requirements of this part;
>  . . .
>
> (iv) Has one or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of these children.
>  . . .
>
> (b) Manner and location of education and services. The SEA may provide special education and related services under paragraph (a) of this section in the manner and at the locations (including regional or State centers) as the SEA considers appropriate. The education and services must be provided in accordance with this part.

34 C.F.R. § 300.227.

In *Chavez ex rel. M.C. v. New Mexico Pub. Educ. Dep't*, 621 F.3d 1275, 1289 (10th Cir. 2010), the Tenth Circuit interpreted these same provisions and found that the New Mexico Public Education Department ("NMPED") was not required to provide services directly where the LEA failed to do so.[3] However, the court explained that the provisions were not applicable to the facts of the case. *Id.* at 1286. The case was brought by the

---

[3] However, at that time, the language was found at 20 U.S.C. § 1413(h)(1)(2000) and 34 C.F.R. § 300.360 (2002).

10

parents of M.C., a six-grader with autism who was enrolled in a classroom with non-disabled students because the school district did not have self-contained classroom to serve M.C. *Id.* at 1277. In the early part of the school year, M.C. began to refuse to go to school. *Id.* In an IEP meeting, M.C.'s parents asked for the school district to send someone to their home to help them. *Id.* at 1277-78. The school district refused. *Id.* at 1278. The school sent homework home until late September of 2003, but then dropped M.C. from the rolls. *Id.* M.C.'s parents had him evaluated and met with the IEP team again in March of 2004. *Id.* The IEP team declined to offer M.C. the residential placement the parents requested. *Id.* In May 2004, the parents filed a due process complaint. *Id.* The administrative proceedings concluded in March of 2005 with finding by the administrative appeal officer that (1) the school district failed to provide M.C. with FAPE since October of 2003; and (2) it appeared that the school district could implement the remedy ordered by the administrative appeal officer. *Id.* at 1279.

The Tenth Circuit assumed without deciding that "determining" in 20 U.S.C. § 1413 means "finding out." *Id.* at 1285. The court explained that subsections (A) and (C) of 20 U.S.C. § 1413 were clearly not applicable and, under subsections (B) and (D), NMPED did not either formally determine that a regional or state delivery system was necessary or that one or more students could best be served by a state or regional program. *Id.* Instead, the administrative appeal officer held that the school district had failed to provide M.C. a FAPE but that it would be able to directly provide education to him with some extra assistance. *Id.* The Tenth Circuit explained that in concluding that NMPED was responsible for providing direct services, the district court merely assumed that, applying *Maher*, "whenever the local agency refuses or wrongfully neglects to provide a

11

handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level." *Id.* (quoting *Maher*, 793 F.2d at 1492).

The Tenth Circuit found that the Ninth Circuit's decision in *Maher* was not applicable because the only notice the NMPED received "was an informal letter, advising the state that the parents were keeping their dispute at the local level and a brief phone call about complying with the due process hearing procedures to challenge [the school district's] IEP." *Id.* at 1289. The court explained: "We believe that the SEA was not on notice of non-compliance such that it should have attempted to take over education for the LEA without allowing the structured evidentiary hearings provided by the Act to run their course." *Id.* The court explained further:

> We certainly agree that there might be a different case where the administrative procedure extends, without interference by the parents, until it becomes apparent that the child is languishing due to unnecessary and excessive delay, so that the state must act, especially when faced with a straightforward parental demand for SEA intervention combined with an obvious failure of the system.

*Id.* at 1290.

This Court concludes that this is a "different case" but nevertheless it is not a case which fits squarely within 20 U.S.C § 1413(g). While ODE ordered the District to take corrective action, ODE did not "determine[ ]" that the District was "unable to establish and maintain programs of free appropriate public education" or "has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children."

This case is also not one which fits within the Ninth Circuit's decision in *Maher*. There is no doubt that the District's breach was significant. ODE found that because the District excluded B.J. from school without any services, the District violated the IDEA.

Plaintiffs gave ODE adequate notice of the District's noncompliance. After the District failed to comply with ODE's orders, Plaintiffs filed a due process complaint and the complaint in this case. However, as the Ninth Circuit explained, the state must be afforded a reasonable opportunity to compel local compliance. 793 F.2d at 1492.

Here, on December 31, 2014, ODE issued a notice of non-compliance and threatened to withhold funds from the District. ODE gave the District until January 15, 2015 to address its noncompliance. The District attempted to provide home instruction on January 12, 2015, but the teacher assigned to work with B.J. did not show up for instruction. On January 15, 2015, ODE again notified the District that it would withhold funds if the District failed to comply. ODE gave the District thirty days to make corrections. On February 12, 2015, ODE began to withhold funds to the District. On March 5, 2015, Plaintiffs settled their claims with the District, and B.J.'s first day of instruction was March 13, 2015. While this passage of time was unacceptable to Plaintiffs, "for these procedures to work, they must be given time: the IDEA does not provide 'immediate' relief." *Chavez*, 621 F.3d at 1287. As the Tenth Circuit explained further in *Chavez*:

> The "dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." ... We do not determine the availability of the relief based on the immediate ability of a plaintiff to attain it, recognizing that "a child may have to go through several procedural steps to take advantage of that remedy."

*Id.* (quoting *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1276 (10th Cir. 2007) (internal citations omitted)). Moreover, ODE was required under the IDEA to give the District "reasonable notice and an opportunity for a hearing" before withholding funds. 20 U.S.C. § 1413(d)(1) ("If the State educational agency, after reasonable notice and an

opportunity for a hearing, finds that a local educational agency or State agency that has been determined to be eligible under this section is failing to comply with any requirement described in subsection (a), the State educational agency shall reduce or shall not provide any further payments to the local educational agency or State agency until the State educational agency is satisfied that the local educational agency or State agency, as the case may be, is complying with that requirement.").

Because ODE was permitted a reasonable opportunity to compel compliance through setting deadlines, threatening to withhold funding, and ultimately withholding funding, this Court concludes that based on the facts of this case, ODE was not required to provide services directly. Accordingly, ODE's Motion for Summary Judgment on Count IX is GRANTED and Plaintiffs' Motion for Partial Summary on Count X is DENIED.

### D. Rehabilitation Act

In Count X of the Second Amended Complaint, Plaintiffs bring a claim for a violation of Section 504 of the Rehabilitation Act. The parties have both filed for summary judgment on this claim. However, Plaintiffs' motion is based on liability only. Plaintiffs explain discovery is necessary to determine damages.

ODE maintains that Plaintiffs' claim under the Rehabilitation Act fails because Plaintiffs cannot show that ODE was deliberately indifferent to Plaintiffs' concerns. ODE explains that it took action in response to Plaintiffs' concerns, and while their concerns may not have been addressed in the way they wanted them to be, Plaintiffs do not have a right to a particular remedial outcome.

Plaintiffs respond that the deliberate indifference standard does not apply because Plaintiffs allege a direct failure to accommodate, and not a claim based upon an injury

caused by a third party. However, Plaintiffs rely on the Ninth Circuit's decision in *Mark H. v. Hamamoto*, 620 F.3d 1090 (9th Cir. 2010), which used the deliberate indifference standard in its analysis. Moreover, a majority of courts have held that a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the Rehabilitation Act. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). While the Sixth Circuit has not decided the issue, it has acknowledged that to "prove discrimination in the education context, courts have held that something more than a simple failure to provide a free appropriate public education must be shown." *N.L. ex rel. Mrs. C. v. Knox Cty. Sch.*, 315 F.3d 688, 695 (6th Cir. 2003) (citing *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982) and *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C.Cir. 1984)); *see also Hill v. Bradley Cty. Bd. of Educ.*, 295 F. App'x 740, 742 & n.2 (6th Cir. 2008) (accepting the parties agreed position that deliberate indifference standard applies without deciding the issue); *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cty., Ky.*, 637 F. App'x 922, 925 (6th Cir. 2016) (same). Under this standard, the Sixth Circuit has explained that a plaintiff:

> must ultimately prove that the defendant's failure to provide [the student] with a "free appropriate public education" was discriminatory. Surmounting that evidentiary hurdle requires that "either bad faith or gross misjudgment must be shown before a § 504 violation can be made out, at least in the context of education of handicapped children." *Monahan v. State of Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982). *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983); *see N.L. ex rel. Mrs. C. v. Knox County Schools*, 315 F.3d 688, 695 (6th Cir. 2003) (citing *Monahan* with approval).

*Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 167 (6th Cir. 2003).

Plaintiffs argue that even if the deliberate indifference standard applies, Plaintiffs can meet that standard. Plaintiffs explain that ODE knew that none of the measures it

15

took resulted in services being provided to B.J.  However, ODE maintains that between December of 2014 and July of 2015, based on the information it received, it appeared that the District was complying or moving towards compliance.

The Court concludes that there is nothing in the record which would support a finding of bad faith or gross misjudgment on the part of ODE.  As explained above, ODE attempted to compel compliance through setting deadlines, threatening to withhold funding, and ultimately withholding funding.  Accordingly, ODE's Motion for Summary Judgment on Count IX is GRANTED and Plaintiffs' Motion for Partial Summary on Count X is DENIED.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiffs' Motion to Strike the Affidavit of Susan Zake (Doc. 74) is **GRANTED**;

2. Plaintiffs' Motion for Partial Summary Judgment as to Count IX against Defendant Ohio Department of Education (Doc. 58) is **DENIED**;

3. Defendant Ohio Department of Health's Motion for Summary Judgment (Doc. 62) is **GRANTED**;

4. Plaintiffs' Motion for Partial Summary Judgment as to Count X against Defendant Ohio Department of Education (Doc. 73) is **DENIED**; and

5. There appearing to be no more matters for decision before this Court, this matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett
                                              United States District Judge